Chana **FRIEDMAN–KATZ**, Plaintiff,

v.

**LINDT & SPRUNGLI (USA), INC., et al., Defendants.**

No. 7:09–CV–05981.

United States District Court, S.D. New York.

Nov. 19, 2010.

Abraham Kleinman, Kleinman LLC, Uniondale, NY, Cathleen M. Combs, Daniel A. Edelman, Edelman, Combs Latturner & Goodwin, LLC, Chicago, IL, for Plaintiff.

Jeffrey S. Boxer, Carter Ledyard & Milburn LLP, New York, NY, James Francis Laboe, Jennifer Aimee Eber, Orr & Reno, Concord, NH, for Defendants.

## OPINION & ORDER

[Resolving Doc. Nos. 11, 28]

JAMES S. GWIN, District Judge:

In this putative consumer class action brought under the Fair Credit Reporting Act, Plaintiff Chana Friedman–Katz seeks to certify a class on behalf of all individuals to whom Lindt Chocolate Store # 347 in West Nyack, New York, provided a receipt that was printed after December 4, 2006 and that contained more than the last five digits of the credit card number or that was printed after June 3, 2008 and displays the expiration date of the person's credit card. [Doc. 11.] Defendant Lindt & Sprungli (USA), Inc. ("Lindt & Sprungli") opposes the motion. [Doc. 27.] The Plaintiff replied. [Doc. 20.] The Plaintiff also files a motion to strike the declaration of Mari J. Frank, which was filed by the Defendant in support of their opposition to

the Plaintiff's motion for class certification. [Doc. 26; Doc. 28.] The Defendant opposes the motion to strike. [Doc. 33.] The Plaintiff replied. [Doc. 37.]

For the following reasons, this Court **DENIES** the Plaintiff's motion for class certification and **DENIES** the Plaintiff's motion to strike as moot.

## I. Background

The Plaintiff brings this putative class action alleging violations of the Fair and Accurate Credit Transactions Act amendment to the Fair Credit Reporting Act. 15 U.S.C. § 1681c(g). The Plaintiff is a resident of New York state. [Doc. 1 at ¶ 15.] The Defendant Lindt & Sprungli is a New York corporation with its principal place of business in New Hampshire. [Doc. 10 at ¶ 17.] The Court has proper jurisdiction over this action under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

Under Fair and Accurate Credit Transactions Act, "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g)(1). A defendant who willfully violates the provisions of the Act is liable to a consumer for (1) any actual damages suffered or (2) statutory damages of not less than $100 and not more than $1000. 15 U.S.C. § 1681n(a)(1)(A). A defendant willfully violates the Act if the violation was committed either knowingly or recklessly. See *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007).

The Plaintiff alleges that on June 28, 2009, after making a purchase at Lindt Store # 347, that she received an electronically printed cash register receipt containing her credit card expiration date. [Doc. 1 at ¶ 19.] The Plaintiff does not allege that she suffered any actual damages, but rather, says that she is entitled to statutory damages. [*Id.* at ¶ 55.]

On June 30, 2009, the Plaintiff brought a putative class action, seeking to certify a class on behalf of all individuals to whom Lindt Chocolate Store # 347 in West Nyack, New York provided a receipt that was printed after December 4, 2006 and contained more than the last five digits of the credit card number or that was printed after June 3, 2008 and displays the expiration date of the person's credit card.[1] [*Id.* at ¶ 21; Doc. 11.]

Defendant Lindt & Sprungli opposes the motion for class certification, saying that the Plaintiff fails to carry her burden under Federal Rule of Civil Procedure 23 to show that class treatment is appropriate. [Doc. 27.] Specifically, the Defendant argues (1) that class certification is not the superior method of adjudication; (2) that the Plaintiff fails to identify an ascertainable class; and (3) that the Plaintiff is not an adequate class representative. [*Id.*]

## II. Legal Standard

Rule 23 of the Federal Rules of Civil Procedure governs class action lawsuits. Fed.R.Civ.P. 23. A court may certify a class action if all of the Rule 23(a) procedural requirements are met and if certification is also appropriate under Rule 23(b)(1), (b)(2) or (b)(3). *Id.*

In reviewing a class certification motion, the court does not evaluate the merits of the plaintiff's claim and must accept all of the allegations in the pleadings as true. *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 133 (2d Cir.2001); *In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 478 n. 5 (S.D.N.Y.2002). The court, however, may need "to probe behind the pleadings before coming to rest on the certification question." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The requirements of Rule 23 are to be applied liberally,

---

1. On June 3, 2008, Congress retroactively removed liability for wilful expiration date violations through June 3, 2008. Credit and Debit Card Receipt Clarification Act of 2007, Pub.L. 110–241 (HR 4008) (2008), 122 Stat. 1565 (2008). Thus, the Defendant can be liable for violations where the credit card number was printed from December 4, 2006 onwards, whereas the Defendant can only be liable for expiration date violations from June 3, 2008 onwards.

although the Court must still conduct a rigorous analysis of the criteria set forth in Rule 23. *Korn v. Franchard Corp.*, 456 F.2d 1206, 1209 (2d Cir.1972); *Dodge v. County of Orange*, 208 F.R.D. 79, 87 (S.D.N.Y.2002). The party seeking certification must establish that the applicable requirements of Rule 23 are met by a preponderance of the evidence. *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir.2008).

Rule 23(a) sets forth four prerequisites to class certification: (1) the class must be so numerous that "joinder of all members is impracticable"; (2) there must be "questions of law or fact common to the class"; (3) the claims of the representative party must be "typical" of those of the class; and (4) the representative party must "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). Once the court finds that all of the Rule 23(a) prerequisites are met, it must also consider the standards set forth in Rule 23(b) to determine if class certification is proper. Rule 23(b)(3) has two components: (1) common issues of fact or law predominate over individual issues; and (2) a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3).[2]

## III. Analysis

*III. A Rule 23(a) Prerequisites*

i. *Ascertainability*

■ Although Rule 23(a) does not expressly require that a class be definite in order to be certified, Second Circuit courts have implied a requirement that a class be identifiable before it may be properly certified. *See, e.g., Dunnigan v. Metropolitan Life Ins. Co.*, 214 F.R.D. 125, 135 (S.D.N.Y. 2003). This requirement is often referred to as "ascertainability." *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 97 (S.D.N.Y.2010). While class members need not actually be ascertained prior to certification, a court must determine that the class will be ascertainable at some stage of the proceedings. *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 338 (S.D.N.Y.2004). This requirement will generally be met where membership in the class can be identified by "reference to objective criteria." *Spagnola*, 264 F.R.D. at 97.

■ The Defendant contends that the class is not ascertainable because the class is imprecise and because determining class membership will require individualized factual determinations. [Doc. 27 at 13–15.] The Court finds both of these arguments unpersuasive. First, membership in the class is defined by identifiable criteria—all debit or credit card customers who received a receipt from Lindt Store # 347 whose receipt was printed after December 4, 2006 and contained more than the last five digits of their credit card number, or whose receipt was printed after June 3, 2008 and contained the expiration date of the card. The contours of this class are clearly set forth and class membership can easily be determined by these criteria. Second, the Court views the small number of individualized factual determinations that must be made here in ascertaining membership in the class as entirely

**2.** Federal Rule of Civil Procedure 23:

(a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if . . .

. . . (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

manageable. Therefore, the Court finds that the proposed class is sufficiently ascertainable.

*ii. Rule 23(a)(1): Numerosity*

 Federal Rule of Civil Procedure 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). "Impracticability does not mean impossibility of joinder, but refers to the difficulty or inconvenience of joinder." *In re Indep. Energy Holdings,* 210 F.R.D. at 479; *Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir.1993) ("Impracticable does not mean impossible."). Instead, numerosity depends upon an "examination of the specific facts of each case and imposes no absolute limitations." *General Tel. Co. of the Northwest, Inc. v. E.E.O.C.,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). Generally, a class composed of more than forty members will satisfy the numerosity requirement. *See Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.1995).

 This prerequisite is not disputed by the parties. Although the Plaintiff does not specifically identify the number of members in the putative class, it is clear that the class could easily number in the hundreds, or even potentially in the thousands. If the cash register at Lindt Store #347 printed the expiration date on Plaintiff Friedman–Katz's receipt, it likely printed an expiration date on the receipt of every credit or debit card transaction it processed. Thus, as defined, the class likely will contain every customer who shopped at this particular store for a period of several months or years. The certification of a class may proceed on estimates, *Kendler v. Federated Dep't Stores, Inc.,* 88 F.R.D. 688, 691 (S.D.N.Y.1981), and the Court finds that the class satisfies the numerosity requirement.

*iii. Rule 23(a)(2): Commonality*

 A plaintiff seeking class certification must also show "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2); *Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir.1997). A single common issue of law may be sufficient to satisfy the commonality requirement. *Vengurlekar v. Silverline Techs.,* Ltd., 220 F.R.D. 222, 227 (S.D.N.Y.2003). "The critical inquiry is whether the common questions are at the core of the cause of action alleged." *Labbate–D'Alauro v. GC Servs. Ltd. Pshp.,* 168 F.R.D. 451, 456 (E.D.N.Y.1996) (quotation marks omitted).

 This prerequisite is also not seriously disputed. Here, the Plaintiff points to several common issues of law or fact that will be at the center of the dispute. These include whether the Defendant had a practice of printing receipts that contained either more than the last five digits of a credit card number or the credit card expiration date, whether that conduct violated the Fair and Accurate Credit Transactions Act, and whether those potential violations were willful. [Doc. 11 at 6.] Several of these determinations may be potentially dispositive to all of the claims against Lindt & Sprungli. The Court, therefore, finds that the commonality requirement is met.

*iv. Rule 23(a)(3): Typicality*

 Under Rule 23(a)(3), a plaintiff seeking class certification needs to show that his or her claims are typical of other potential class members' claims. Fed.R.Civ.P. 23(a)(3). Typicality is met when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Group,* 960 F.2d 285, 291 (2d Cir. 1992). "While it is settled that the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification, class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 180 (2d Cir.1990) (citation omitted). "The test is whether the defenses will become the focus of the litigation, thus overshadowing the primary claims, and prejudicing other class members." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 209 F.R.D. 323, 338 n. 22 (S.D.N.Y. 2002).

The Defendant says that the typicality requirement of Rule 23(a)(3) is not met because the Plaintiff's class definition does not distinguish between consumer and business card holders. [Doc. 27 at 14.] Under the Fair Credit Reporting Act, "[a]ny person who willfully fails to comply with any requirement of this with respect to any consumer is liable to that *consumer* ...." 15 U.S.C. § 1681n (emphasis added). The private right of action under the Fair and Accurate Credit Transactions Act is provided in the Fair Credit Reporting Act, and thus, any right to sue under the Fair and Accurate Credit Transactions Act is limited to "consumers." *Follman v. Village Squire, Inc.,* 542 F.Supp.2d 816, 819 (N.D.Ill.2007) (finding that the "unambiguous language" of the Fair Credit Reporting Act provides a private right of action for "consumers" to enforce the requirements of the Fair and Accurate Credit Transactions Act). The Defendant's argument that the Plaintiff's claims are not typical of the class because the applicable statute is limited to consumers is not availing.[3] The Plaintiff purchased chocolate at the Lindt store as a consumer, and therefore, the Court finds that the Plaintiff's claims are typical of other class members. [Doc. 21–1 at 6.] Thus, the typicality requirement of Rule 23(a)(3) is satisfied.

### v. Rule 23(a)(4): Adequacy

A plaintiff seeking to represent the class must also show that he or she will "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). This requirement's purpose is to protect the due process rights of absent class members, as those individuals will be bound by *res judicata.* To prove adequacy, the Plaintiff must demonstrate that (1) the class counsel is qualified, experienced, and generally able to conduct the litigation and (2) that the class members must not have any interests antagonistic to one another. *In re Drexel Burnham Lambert Group,* 960 F.2d at 291. The Defendant disputes both prongs of this inquiry, saying that both Plaintiff Friedman–Katz and putative class counsels, Abraham Kleinman and Daniel Edelman, are inadequate.

The Defendant questions the ability of Plaintiff Friedman–Katz, to adequately serve as a class representative. The Defendant sets forth several reasons for why Friedman–Katz is inadequate, but the most damaging accusations are those related to the credibility and truthfulness of the Plaintiff. Specifically, the Defendant says that the Plaintiff repeatedly gave false testimony under oath during this lawsuit, and therefore, lacks the honesty and credibility required to be a class representative. [Doc. 27 at 19–31.]

On January 19, 2010, the Plaintiff responded to the Defendant's interrogatories. [Doc. 21–3.] In the response, Plaintiff stated that she was a party to four legal action over the past fifteen years.[4] Additionally, in her interrogatories, the Plaintiff stated that prior

---

3. The Defendant cites to a recent decision from the Northern District of Illinois, *Pezl v. Amore Mio, Inc.,* 259 F.R.D. 344 (N.D.Ill.2009), that denied class certification on a claim brought under the Fair and Accurate Credit Transactions Act because the plaintiff's claim in that suit was not typical of the class. [Doc. 27 at 14.] The Defendant argues that this case supports the proposition that claims brought under Fair and Accurate Credit Transactions Act can not be properly certified because the private right of action under that Act is limited to consumers. [*Id.*] In that decision, the plaintiff used a corporate credit card to make a purchase and sued because more than five digits of his credit card were visible on the receipt. *Pezl,* 259 F.R.D. at 347. However, the Defendant's reliance turns that decision on its head—there, the plaintiff was subject to a unique defense since *he* used a corporate card to make a purchase. *Id.* Here, the Plaintiff alleges that her purchase was made with a consumer credit card, and accordingly, no similar defenses exist. [Doc. 20 at 8.]

4. "1. Describe in detail every single legal action to which you have been a party in the past 15 years, including but not limited to the nature of the action, all counsel that represented you in the action, damages alleged, and if the action is closed, the details of the resolution, including the details of any settlement.
 **ANSWER:** (1) *Friedman–Katz v. PNC Bank NA.* Filed 4/2/09—*Kleinman LLC,* Counsel—Electronic Funds Transfer Act; (2) *Friedman–Katz v. CQM of Cold Spring, Inc. et al.* Filed 6/4/09—*Kleinman LLC,* Counsel—*Fair Credit Reporting Act;* (3) *Friedman–Katz et al. v. Statue Cruises, LLC et al.* Filed 7/8/09—*Kleinman LLC,* Counsel—*Fair Credit Reporting Act;* (4) *Katz et al v. Zavatasky, Mendelson & Levy, LLP.* Filed 8/27/09—*Kleinman LLC,* Counsel." [Doc. 21–3 at 2.]

to this lawsuit that she had no previous relationship with Daniel Edelman or his law firm and that her relationship with Abraham Kleinman was strictly "professional in nature." [Doc. 21–3 at 3.] The Plaintiff also stated that aside from the receipt that is the subject of this action, she had never received a credit card receipt with more than the last five digits of a credit card number or the expiration date printed on it. [Doc. 21–3 at 4.]

At her deposition, held on June 8, 2010, the Defendant again swore that all of her interrogatory responses were accurate—in particular the Plaintiff swore that she had no contact with David Edelman, professional or otherwise, prior to the filing of this suit.[5] However, when the Defendant began presenting the Plaintiff with contradictory evidence, she changed her testimony and claimed she had suffered from poor memory. For example, the Plaintiff admitted that she had actually received receipts that violated the Fair and Accurate Credit Transactions Act on at least two other occasions that are the subject of other pending litigation in the Southern District of New York.[6] The Court

5. Chana Friedman–Katz testified:

 Q. Turning to Exhibit 2 [Plaintiff's interrogatory responses], you provided accurate and truthful responses to defendants' interrogatories, correct?
 A. Yes.
 . . .
 Q. If we could turn to interrogatory number 3, it states, the question states: 'Describe in detail all personal or professional contact that you have had prior to the filing of the litigation with the law firms of Kleinman, LLC and/or Edelman Combs Latturner & Goodwin, LLC or with any person including any member, partner, employee, agent, or representative affiliated or associates in any with the law firms of Kleinman, LLC and/or Edelman Combs Latturner & Goodwin, LLC.' Did I read the question correctly?
 A. Yes.
 Q. And your answer: 'Plaintiff objects on the grounds that the interrogatory calls for information protected by attorney-client and attorney-work product privileges. Subject to and notwithstanding said objection, plaintiff had no previous relationship with Edelman Combs Latturner & Goodwin, LLC, and all contact with Kleinman, LLC is professional in nature.' Did I read that correctly?
 A. Yes.
 Q. Is that an accurate responses?
 A. That is.
 Q. So prior to the litigation against Lindt, you had no previous relationship, professional or otherwise, with Edelman Combs Latturner & Goodwin, LLC, correct?
 A. Correct.
 [Doc. 21–1 at 8–9]

6. Chana Friedman–Katz testified:

 Q. Turning to Exhibit 2, you provided accurate and truthful responses to defendants' interrogatories, correct?
 A. Yes.
 . . .
 Q. Now, if you could turn to page 3, interrogatory number 6.
 A. Yes.

 Q. The question is: 'Have you ever received a receipt, other than from Lindt, that has either more than the last five digits of the card number or the expiration date on it. If yes, please describe in detail, including the identity of the receipt provider, the date, the amount and a copy of the receipt.' Did I read the question correctly?
 A. Yes.
 Q. And the answer: 'To the Plaintiff's knowledge, she has not received a receipt with either more than the last five digits of the card number, or the expiration date upon it from a merchant other than defendant.' Did I read it correctly?
 A. Yes.
 Q. And is that an accurate response?
 A. I did receive one receipt from another company though.
 Q. And that one receipt, where did you receive that from?
 A. Statue Cruises.
 . . .
 Q. Aside from that one receipt, have you received any other receipts?
 A. I don't believe so.
 . . .
 Q. Mr. Friedman–Katz, I'm showing you what has been marked as Exhibit 3 to your deposition. Do you recognize that document?
 A. Yes, I do.
 Q. And what is that
 A. That is a similar case against Foodtown in New York. I had forgotten about that, actually.
 Q. And this was filed on June 4, 2009, is that correct?
 A. That's correct.
 Q. And it was filed in the U.S. District Court for the Southern District of New York, docket number 09—
 A. That's correct.
 Q. CV 5249?
 A. That's correct.
 Q. Is it before Judge Kathy Seibel, is that correct?
 A. Apparently, yes.
 Q. If you could turn to paragraph 19, it states, 'On May 15, 2009, plaintiff received from Foodtown of Cold Springs, 49 Chestnut Road, Cold Spring, New York 10516, a computer-

notes that the proposed class counsels, Abraham Kleinman and Daniel Edelman, are currently representing Plaintiff Friedman–Katz in both of these actions and were also surely aware that the responses to the interrogatory, as well as the initial deposition response, were false.[7] At her deposition the Plaintiff also admitted that she was involved in a personal injury action that was not disclosed in her interrogatories. [Doc. 21–1 at 19–20.] Additionally, after being confronted with further contradictory evidence, the Plaintiff admitted that her relationship with David Edelman actually predates the filing of this case and that he is representing her in several lawsuits that were filed prior to the current suit.[8] At the end of her deposition, the Plaintiff admitted that attorneys Kleinman and Edelman might have represented her in other lawsuits that she did not disclose in her interrogatories, but denied that they were currently representing her in any other non-disclosed matters.[9] [Doc. 21–1 at 24.]

In reality, the Plaintiff was a named party in at least twelve lawsuits over the past fifteen years—ten in New York,[10] one in New

---

generated cash register receipt which displayed plaintiff's card expiration date. This receipt is attached as exhibit A with the credit card number and expiration date redacted.' Did I read it correctly?
A. Correct.
Q. Is that an accurate statement?
A. That is.
[Doc. 21–1 at 8, 14.]

**7.** *See Friedman–Katz v. Statue Cruises, LLC*, No. 09–cv–6699 (S.D.N.Y., filed July 28, 2009); *Friedman–Katz v. CQM of Cold Spring, Inc. et. al.*, No. 09–cv–5249 (S.D.N.Y., filed June 4, 2009).

**8.** Chana Friedman–Katz testified:
Q. And on page 11, Edelman Combs Latturner & Goodwin, LLC are also involved in the case against CQM [*Friedman–Katz v. CQM of Cold Spring, Inc. et. al.*], is that right?
A. That's correct.
Q. And why in response to interrogatory number 3 did you state that you had no previous relationship with Edelman Combs Latturner & Goodwin, LLC?
A. For the same reason my response number 6, I obviously—I was obviously not thinking of that at the time.
Q. You—
A. That's not—
Q. You provided those responses, correct?
A. Yes.
Q. And you provided those responses under oath, is that correct?
A. Correct.
Q. Why in response to interrogatory number 3 did you state that you had no previous relationship with Abraham Kleinman?
A. Like I stated before, I obviously was not thinking of this.
. . .
Q. Attorney Kleinman is representing you in this case against PNC Bank [*Friedman Katz v. PNC Bank NA* ], is that correct?
A. That is correct.
Q. The Edelman Combs law firm is also representing you in the PNC case, correct?
A. Correct.
. . .

Q. If, in fact, [the PNC case] was filed on April 2, 2009, you had at least a professional relationship with Attorney Kleinman, correct?
A. That's correct.
Q. And you had a professional relationship with Edelman Combs, is that correct?
A. That's correct.
Q. And why, in response to interrogatory number 3, did you state that you had no previous relationship with Edelman, Combs, Latturner & Goodwin, LLC?
A. I don't know. I wasn't thinking of the other cases obviously.
[Doc. 21–1 at 15, 18.] Kleinman and Edelman are also representing Friedman–Katz's husband, David Katz, in two actions in the Southern District of New York that allege violations of the Fair and Accurate Credit Transactions Act and the Electronic Funds Transfer Act. [Doc. 27 at 22.] These actions were also filed prior to the filing of the current suit, and should also have been disclosed in the interrogatory questions related to Kleinman and Edelman. *Katz v. The Robot Factory*, No. 09–cv–05248 (S.D.N.Y., filed Jun. 4, 2009); *Katz v. Palisades Federal Credit Union*, No. 09–cv–01745 (S.D.N.Y., filed Feb. 25, 2009).

**9.** This is also false, since Kleinman and Edelman were actively representing the Plaintiff in a lawsuit in the Northern District of Ohio at the time of her deposition. *Arthur v. National City Bank*, 09–cv–01409 (N.D. Ohio, filed Jun. 21, 2009).

**10.** *Friedman Katz v. PNC Bank NA*, No. 09–cv–3219 (S.D.N.Y., filed Apr. 2, 2009); *Friedman–Katz v. CQM of Cold Spring, Inc. et. al.*, No. 09–cv–5249 (S.D.N.Y., filed June 4, 2009); *Friedman–Katz v. Statue Cruises, LLC*, No. 09–cv–6699 (S.D.N.Y., filed July 28, 2009); *Katz v. Zavatsky, Mendelson & Levy, LLP*, No. 09–cv–7488 (S.D.N.Y., filed Aug. 27, 2009); *Friedman–Katz v. BNA Financial Services*, No. 08–cv–10800 (S.D.N.Y., filed Dec. 12, 2008); *Friedman–Katz v. Spinella Owings & Shaia, P.C.*, No. 08–cv–11171 (S.D.N.Y., filed Dec. 23, 2008); *Chana Friedman–Katz v. ABC Corp.*, No. L–009037–04 (New Jersey Superior Court, Essex County); *Friedman v. AFNI, Inc.*, No. 08–cv–971 (S.D.N.Y., filed Feb.

Jersey,[11] and one in Ohio.[12] [Doc. 27 at 19.] All but one these lawsuits were filed prior to her deposition on June 8, 2010 and all but two were filed prior to the Plaintiff returning the interrogatories on January 19, 2010.[13] [*Id.*] The Plaintiff is or was represented by Abraham Kleinman in eleven of these actions and is or was represented by Daniel Edelman in four. Thus, it is clear that in her sworn interrogatories the Plaintiff failed to disclose at least seven prior or pending lawsuits, failed to disclose two other instances in which she received a credit card receipt that violated the Fair and Accurate Credit Transactions Act, and seriously misrepresented her relationship with both of the proposed class counsels. Similarly, in her deposition, the Plaintiff failed to disclose four lawsuits, lied about other instances in which she received a relevant credit card receipt, and again misrepresented her relationship with both of the proposed class counsels. Although the Plaintiff ultimately came at least partially clean on all three of these issues at her deposition, she did not do so until after she repeated her false interrogatory statements under oath and was then confronted with evidence that proved her answers were false.

■ Second, related to these allegations, the Defendant also questions whether Abraham Kleinman and Daniel Edelman possess the requisite ethical and moral characteristics to serve as class counsels. [Doc. 27 at 24.] In particular, the Defendant points out that these attorneys knew that much of Friedman–Katz's testimony under oath was false and allowed—or even encouraged—the false testimony. Indeed, after listening to the Plaintiff give a number of blatantly false responses at her deposition, Kleinman made no effort to correct the record during his redirect examination; instead, at the close of her deposition, Kleinman simply had the Plaintiff re-read her interrogatory answer that falsely listed only four prior or pending lawsuits involving the Plaintiff.[14]

After considering this information, the Court finds that Friedman–Katz purposely gave false testimony under oath. The Court also finds that her attorneys—Kleinman and Edelman—knew that these statements were false, failed to correct them, and likely also encouraged the testimony. Having made these factual determinations, the Court must now decide whether this misconduct is sufficient to prevent class certification under Rule 23(a)(4).

■ In considering the adequacy of a proposed class representative under Rule 23(a)(4), courts consider the familiarity of the putative class representative with the action, whether the representative has potential conflicts or antagonistic interests with the rest

2, 2008); *Friedman v. Credit Bureau Services, Inc.*, No. 08–cv–02010 (S.D.N.Y., filed Feb. 28, 2008); *Friedman–Katz v. Professional Recovery Services, Inc.*, No. 10–cv–04708 (S.D.N.Y., filed Jun. 16, 2010).

11. *National City Mortgage Company v. Friedman–Katz*, No. SU–2009–002815 (Supreme Court of New York, Rockland County)

12. *Arthur v. National City Bank*, 09–cv–01409 (N.D. Ohio, filed Jun. 21, 2009).

13. It is unlikely that these are the only lawsuits in which the Plaintiff was involved that were not disclosed. The Defendants discovered the New York cases on ECF in the Southern District of New York and brought them to the Court's attention. The Court discovered the Ohio case by running a similar ECF search in the Northern District of Ohio. There are many other federal district courts or state courts in which the Plaintiff may have brought claims that were not searched.

14. Chana Friedman–Katz testified:

Q. And do you see question number 1?
A. Yes.
Q. Could you read question number 1 for me, please?
A. 'Describe in detail every single legal action to which you have been a party in the past 15 years, including but not limited to the nature of the action, all counsel that represented you in the action, damages alleged, and if the action is closed, the details of the resolution, including the details of any settlement.'
Q. And could I trouble you to read the answer?
A. Sure. Answer: *'One, Friedman–Katz v. PNC Bank NA, filed 4/2/09, Kleinman LLC, counsel, Electronic Funds Transfer Act. Two, Friedman–Katz v. CQM of Cold Spring, Inc. et al. filed 6/4/09, Kleinman LLC, Counsel, Fair Credit Reporting Act. Three, Friedman–Katz et al. v. Statue Cruises, LLC et al., filed 7/8/09, Kleinman LLC, Counsel, Fair Credit Reporting Act. Four, Katz et al v. Zavatasky, Mendelson & Levy, LLP, filed 8/27/09, Kleinman LLC, Counsel.'*
[Doc. 21–1 at 25.]

of the class, and whether the representative has sufficient moral character to represent the class. *In re Drexel,* 960 F.2d at 291; *Savino v. Computer Credit, Inc.,* 164 F.3d 81, 87 (2d Cir.1998). The Court may properly consider a plaintiff's personal qualities when deciding if she is a proper class representative. *Cromer Fin. Ltd. v. Berger,* 205 F.R.D. 113, 124 (S.D.N.Y.2001). However, "the inquiry ... into the representative's personal qualities is not an examination into their moral righteousness, but rather an inquiry directed at improper or questionable conduct arising out of or touching upon the very prosecution of the lawsuit." *Jane B. by Martin v. New York City Dept. of Social Services,* 117 F.R.D. 64, 71 (S.D.N.Y.1987); *Panzirer v. Wolf,* 663 F.2d 365 (2d Cir.1981); *London v. Wal–Mart Stores, Inc.,* 340 F.3d 1246, 1254 (11th Cir.2003) (named plaintiff must "possess the personal characteristics and integrity necessary to fulfill the fiduciary role of class representative.").

Although a minor discrepancy in testimony should not prevent certification, the serious misrepresentations made here by the Plaintiff weigh heavily in favor of finding that she is not an adequate class representative. *Compare Lapin v. Goldman Sachs,* 254 F.R.D. 168, 179–80 (S.D.N.Y.2008) (minor discrepancy in testimony did not prevent class certification) and *Kalodner v. Michaels Stores,* 172 F.R.D. 200, 210 (N.D.Tex.1997) (same) *with Kaplan v. Pomerantz,* 132 F.R.D. 504, 509–10 (N.D.Ill.1990) (granting motion to decertify class where plaintiff gave false information in a "deliberate attempt to conceal."). Indeed, inconsistent or false testimony "could create serious problems with respect to plaintiff's credibility and could become the focus of cross examination ... to the detriment of the class." *Darvin v. International Harvester Co.,* 610 F.Supp. 255, 257 (S.D.N.Y.1985) (denying class certification

where plaintiff refused to truthfully answer questions and provided inconsistent testimony); *Searcy v. eFunds Corp.,* 2010 WL 1337684, at *4, 2010 U.S. Dist. LEXIS at *16–18 (N.D.Ill. Mar. 31, 2010) (decertifying class due to credibility issues where class representative lied under oath). Considering the willingness of the Plaintiff to give intentionally false testimony, the Court declines to allow such an individual to represent the interests of potentially thousands of individuals as class representative. Further, the Court worries that the credibility of Friedman–Katz will become the focus of cross-examination at trial, impeding her ability to effectively represent the class.

■ Similarly, in considering whether the proposed class counsels are adequate, the Court may consider the honesty and integrity of the putative class counsels, as they will stand in a fiduciary relationship with the class. *Kingsepp v. Wesleyan University,* 142 F.R.D. 597, 599 (S.D.N.Y.1992); *Greenfield v. Villager Indus., Inc.,* 483 F.2d 824, 832 (3d Cir.1973) ("class counsel possess, in a very real sense, fiduciary obligations to those not before the court"); *Wagner v. Lehman Bros. Kuhn Loeb, Inc.,* 646 F.Supp. 643, 661 (N.D.Ill.1986).[15] As noted, the Court finds that Kleinman and Edelman were complicit in the misrepresentations made by the Plaintiff during her deposition and in response to her interrogatories. At the least, her attorneys allowed false testimony to be given; while at the worst, the testimony was actually encouraged and counseled. Indeed, this is not simply a case where an attorney negligently allowed a client to testify falsely. Rather, the factual information that Friedman–Katz misrepresented was information that both of her attorneys undoubtedly knew was false, since the information was all related to other lawsuits in which they were

---

15. Under Rule 23(g), the Court also considers: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; (4) the resources that counsel will commit to representing the class; and (5) any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class. Fed.R.Civ.P. 23(g). The Court finds that Daniel Edelman is qualified to represent the class since he has been involved in many class action lawsuits, is familiar with the relevant law, and possesses adequate resources to pursue the action. [Doc. 11–1 at 15–23.] The Court has been provided with no information that allows it to assess the qualifications of Abraham Kleinman. However, regardless of the qualifications of proposed class counsels, in assessing their fitness to serve as class counsels the Court finds that their misconduct in this case far outweighs any of their positive attributes.

representing the Plaintiff. Likely, the false interrogatory responses were drafted by the Plaintiff's attorneys. This behavior also weighs heavily in finding that Rule 23(a)(4) is not met. *See Wagner*, 646 F.Supp. at 662 (denying class certification where proposed class counsel was a silent accomplice in false testimony at deposition); *Kaplan*, 132 F.R.D. at 509–10; *Taub v. Glickman*, 14 Fed. R. Serv.2d 847, 849 (S.D.N.Y.1970).

After considering the behavior of Plaintiff Friedman–Katz and the putative class counsels, Abraham Kleinman and Daniel Edelman, the Court finds that Rule 23(a)(4) is not met. *See, e.g., Kaplan*, 132 F.R.D. at 509–10 (decertifying a class after finding that the class representative and class counsel intentionally made misrepresentations regarding prior lawsuits in which the representative and counsel were involved). The Court will not allow these three individuals to manage a class action that will determine the legal rights of potentially thousands of individuals. The Plaintiff and her attorneys have shown a clear inability to satisfy the fiduciary responsibilities that their respective positions would entail.[16] Thus, the motion to certify a class action is denied.

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** the Plaintiff's motion for class certification and **DENIES** the Plaintiff's motion to strike as moot.

IT IS SO ORDERED.

---

16. The Plaintiff also moves to strike the declaration of Mari J. Frank, which was filed in support of the Defendant's opposition to class certification. [Doc. 28; Doc. 26.] Frank is a lawyer in California and claims to be an expert on identity theft. [Doc. 26 at 1–2.]

The Court need not resolve this motion for several reasons. First, the Court finds that the declaration is entirely irrelevant on the issue of whether class certification is appropriate. The declaration focuses on whether the proposed class members were threatened with identity theft and on Congress's intent in passing the Fair and Accurate Credit Transactions Act, among other topics. [Doc. 26.] Whether or not printing expiration dates on credit cards increases the risk of identity theft is not relevant to the issue of class certification. Similarly, Congressional intent is also not relevant on the current motion. Congress passed the Fair and Accurate Credit Transactions Act and provided actual and statutory damages for exactly the violation alleged in this suit. The Court can—and did—adequately proceed through the Rule 23 factors without considering the information in the declaration.

Second, and more importantly, this declaration has no bearing on the adequacy of class representative and class counsel under Rule 23(a)(4). The Plaintiff must prove that each of the Rule 23(a) factors is met and failed to do so here. Thus, the declaration is irrelevant with regard to the dispositive issue in this motion. Therefore, the Court denies the motion to strike as moot.